IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

_____

| | | |
|---|---|---|
| JIMMY F. McHENRY, PRO SE, | § | |
| TDCJ-CID No. 1811322, | § | |
| Previous TDCJ-CID No. 1060917, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:13-CV-0228-J |
| | § | |
| STINNETT POLICE DEPARTMENT ET AL., | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION TO GRANT THE RULE 12(b)(6)
MOTIONS TO DISMISS BY DEFENDANTS LAMBERT AND MASSENGIL**

Before the Court for consideration are Patrick Lambert's Rule 12(b)(6) Motion to

Dismiss with Supporting Brief, Individually [D.E.9], and Jeremiah James Massengil's Rule

12(b)(6) Motion to Dismiss [D.E.8], both filed November 18, 2013 in the above-referenced and

numbered cause.

Plaintiff has not responded to these motions to dismiss.  Plaintiff's subsequent motions to

amend and/or for remand, primarily for the purpose of defeating this Court's jurisdiction on

removal, have been denied.  However, on August 4, 2014, plaintiff filed a document entitled

"Plaintiff's Disclosure of Evidence and Reply" [D.E.69] by which he presents a radiologist's

report on X-rays taken June 13, 2014 of plaintiff's right hand.  The radiologist's findings in this

report were:  1. fractured hardware, fourth metacarpal, with fracture through the distal aspect of

the compression plate, seen through the interval between the distal and middle screw; and

2. healing fracture involving the fifth metacarpal.  Plaintiff argues this report shows plaintiff was

injured by the use of force which occurred October 29, 2011 and which forms the basis of the instant lawsuit.

Plaintiff's claims against defendant STINNETT POLICE DEPARTMENT, defendant HUTCHINSON COUNTY SHERIFF'S OFFICE and defendant HUTCHINSON COUNTY JAIL have been dismissed. Plaintiff's federal civil rights claims against defendants ROGERS, LAMBERT, MASSENGIL, and FARBRO in their official capacities have been dismissed, along with plaintiff's state law claims against these defendants in both their official and individual capacities. Further, plaintiff's claims for declaratory relief, injunctive relief, punitive damages and for attorney's fees have been dismissed.

## CLAIMS

Plaintiff alleges that, around midnight on October 28, 2011, he drove to his sister's to ask to spend the night. He says he parked his truck behind her travel trailer. After sitting in his truck and smoking a cigarette for half an hour, he called the residence but, due to bad cellphone reception, the "conversation was disrupted." Plaintiff says he went to the front door and knocked, but no one answered, so he turned and began walking back to his truck. He says he was "where the lighting was darker" when an Officer ROGERS approached him at about 12:30 a.m. of what then would have been October 29, 2011. Plaintiff says ROGERS used a taser on plaintiff and plaintiff "felt something strike [him] with a sudden intense jolt, and severe shock hurting [him,] [and he] felt like [he] was shot."

Plaintiff says he became frightened, ran back to his truck and drove back to the city of Stinnett. Plaintiff states that, as he approached Stinnett, he noticed a police vehicle was following him, which was soon joined by several other police cruisers. Plaintiff says he drove

through town until he came to a convenience store "where [he] felt was a safe place to stop" and where it was well lighted.  He says he ran out of gas before stopping and when he "applied [his] brakes hard to rapidly stop," a patrol car [driven by defendant MASSENGIL] "intentionally and recklessly struck [his] truck" from behind.

Plaintiff states he then got out of his truck and ran from the officers until he was "struck by something with intense jolts, with intense pain to [his] body."  Plaintiff also alleges at some point during the struggle defendant MASSENGIL discharged his weapon one time.  Plaintiff says he was then taken to the ground where he experienced severe pain in his left wrist "from past injuries."  He says he also experienced pain in his right knee and felt something pop.  Plaintiff now appears to be alleging an injury to his right hand occurred as well during this October 2011 use of force, based upon plaintiff's submission of the radiologist report on x-rays of plaintiff's right hand taken June 13, 2014.  Plaintiff alleges he was choked repeatedly by ROGERS and defendant LAMBERT until he lost consciousness.  Plaintiff further alleges that when he was handcuffed, the hand restraints were applied too tightly.

Plaintiff says he regained consciousness for a brief time in the Emergency Room, but did not speak.  Plaintiff states he was examined by a doctor at the hospital who administered Valium in a dosage which plaintiff contends was excessive.  Plaintiff was discharged from the hospital on October 29, 2011, the same day he was admitted, at or around 11:05 a.m.

Plaintiff claims defendant LAMBERT, acting with ROGERS and with the Fire Chief, should never have agreed to move plaintiff from the hospital after his discharge by medical staff because there was not sufficient medical staff at the jail to care for plaintiff and he could not care for himself in his heavily-sedated and injured condition.

Plaintiff says he was unconscious until October 31, 2011 around 11:40 a.m. when he awoke with severe pain in his wrists and his hands were numb and tingling. Plaintiff says his head and body hurt and his knee was popping. Plaintiff requested medical attention and an attorney. He was provided a tray of food and, later, was seen by a doctor who examined him and dispensed some aspirin. On an unspecified date, plaintiff was taken to a doctor in Borger who had x-rays taken at the Golden Plains Community Hospital, but plaintiff does not identify what part of his body was x-rayed nor does he state what the results were.

Plaintiff claims that during the arrest defendant LAMBERT assaulted plaintiff by choking him, that he used excessive force by placing handcuffs on too tight, and caused an injury to plaintiff's left pinky finger and right knee.

Plaintiff claims defendant MASSENGIL attempted to kill plaintiff by hitting plaintiff's truck with a police vehicle and unlawfully discharged his service weapon willfully and recklessly upon plaintiff, who was unarmed. Plaintiff claims MASSENGIL also placed handcuffs on plaintiff too tight, and caused injury to plaintiff' left pinky finger and right knee.

## STANDARD OF REVIEW UNDER RULE 12(b)(6)

Rule 12(b)(6) provides for dismissal of an action for failure to state a claim upon which relief can be granted. FED.R.CIV.PRO. 12(b)(6). To defeat the motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 570, 127 S.Ct. 1955, 167 L.E.2d 292 (2007). The plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citation and footnote

omitted).  However, legal conclusions need not be accepted as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

"[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.  A statement of facts that merely creates a suspicion that the pleader might have a right of action is insufficient."  *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).  If the complaint lacks a required element which is a prerequisite to obtaining relief, dismissal is proper.  *Clark v. Amoco Prods. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Southern Christian Leadership Conference v. Supreme Court of the State of Louisiana*, 252 F.3d 781, 786 (5th Cir. 2001)(quoting *Fernandez-Montez v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993)).

In reviewing a motion for 12(b)(6) dismissal, the court must consider all of plaintiff's well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (citing *Great Plains Trust Co. v. Morgan, Stanley, Dean, Witter, & Co.*, 313 F3d 305, 312 (5th Cir. 2002).  All reasonable inferences must be drawn in favor of the non-movant's claims, *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997); and the *pro se* litigant's pleadings should be afforded a liberal construction, even if they are inartfully phrased.  *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 164 L.Ed.2d 1081 (2007).

Dismissal for failure to state a claim does not require a determination that, beyond a doubt, the plaintiff can prove no set of facts in support of his claim that would entitle him to

relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929

(2007).  Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim for relief that is plausible on its face.' "  *Ashcroft v.*

*Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citation omitted).

## THE LAW AND ANALYSIS

Both defendant LAMBERT and MASSENGIL raise the defense of qualified immunity in

their motions to dismiss.  "[G]overnment officials performing discretionary functions generally

are shielded from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."

*Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  Qualified

immunity is an affirmative defense, but the plaintiff bears a heightened burden to negate the

defense once it is properly raised.  *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

In determining whether the plaintiff has overcome the defense of qualified immunity, the

court considers whether the plaintiff asserted a violation of a constitutional right.  Analysis at this

stage is performed under the "currently applicable constitutional standards."  *Rankin v.*

*Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).  The second prong of the qualified immunity test

is whether the constitutional right alleged to have been violated was clearly established at the

time of the incident; and, if so, whether the conduct of the defendant was objectively

unreasonable in light of clearly-established law as it existed at the time of the conduct in

question.  *Hare v. City of Corinth*, 135 F.3d 320, 328 (1998) (citing *Rankin v. Klevenhagen*, 5

F.3d 103, 108 (5th Cir. 1993).

In deciding which of the two prongs to address first, the court may utilize its sound discretion in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

**EXCESSIVE FORCE CLAIMS**

Excessive force claims are analyzed under the reasonableness standard of the Fourth Amendment. *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012)(citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In the Fifth Circuit, a plaintiff asserting an excessive force claim must show: (1) a physical injury; (2) which resulted directly and only from the use of force that was clearly excessive to the need; and (3) the excessiveness of which was objectively unreasonable. *Id.*; *Ikerd v. Blair*, 101 F.3d 430, 544-34 (5th Cir. 1996). The plaintiff is not required to show a significant injury for Fourth Amendment excessive force analysis, but it is necessary that the plaintiff suffered some injury that is more than *de minimis*. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

Claims of excessive force involve a fact intensive inquiry. *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012). Courts do not judge the reasonableness of the officers' use of force from the safety of their chambers "with the 20/20 vision of hindsight," but "from the perspective of a reasonable officer on the scene . . . ." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). The Court must consider "whether the officers' actions [we]re 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id*. Among relevant factors to consider are "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the

officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Each officers' actions are examined independently to determine whether he is entitled to qualified immunity. *Meadours v. Ermel*, 483 F.3d 417, 421-22 (5th Cir. 2007).

Plaintiff claims defendant MASSENGIL attempted to kill plaintiff by hitting plaintiff's truck with a police vehicle and later unlawfully discharged his service weapon willfully and recklessly upon plaintiff, who was unarmed.

As to the collision of MASSENGIL's vehicle with plaintiff's truck, plaintiff's factual allegations do not support an inference that the impact was intentional. In fact, plaintiff states he ran out of gas and "applied [his] brakes hard to rapidly stop." Plaintiff has alleged no fact which suggests defendant MASSENGIL intentionally struck plaintiff's truck or even that he could have avoided the crash under the circumstances plaintiff alleges surrounded his pursuit and apprehension.

Plaintiff also claims defendant MASSENGIL utilized excessive force when he discharged his weapon, though plaintiff does not allege he was injured by this act. Plaintiff appears to acknowledge, at paragraph 64 of his complaint, that MASSENGIL's discharge of his weapon may have been accidental, when he argues MASSENGIL should not have "been negligent and had his gun drawn."

Additionally, plaintiff has failed to allege he suffered any injury as a result of the automobile crash or from the discharge of MASSENGIL's weapon. Therefore, even if the Court accepted plaintiff's conclusory and completely unsupported allegation that the automobile crash

and the weapon discharge were intentional, plaintiff has failed to state a claim of excessive force against defendant MASSENGIL on either ground, since he was not injured.

In deciding defendants' motions to dismiss, the Court accepts as true plaintiff's allegations that defendants LAMBERT and MASSENGIL forced plaintiff to the ground, and that defendant LAMBERT, along with defendant ROGERS, used a chokehold to subdue plaintiff, and that LAMBERT and MASSENGIL placed handcuffs on plaintiff.  The Court also accepts plaintiff's contention, made in his pleading at Docket Entry 69, that, at this time, he suffered the break of his right fifth metacarpal and the break of the hardware in his fourth metacarpal which were not discovered until June of 2014.  Plaintiff says when forced to the ground, he experienced severe pain in his left wrist "from past injuries," experienced pain in his right knee, and felt something pop.   Plaintiff says he also suffered loss of breath, dizziness, and loss of consciousness as a result of the chokehold and suffered cuts from the handcuffs and tingling and numbness.

What constitutes an injury in an excessive force claim is subjective and is defined entirely by the context in which the injury arises.  *Williams v. Bramer*, 180 F.3D 699, 704 (5th Cir. 1999).

An officer in defendant LAMBERT's and defendant MASSENGIL's positions would have known plaintiff had been pursued through the city of STINNETT by law enforcement officers in several police vehicles including LAMBERT's and MASSENGIL's.  They would have known plaintiff refused to stop until he ran out of gas at the Allsup's convenience store and was hit by MASSENGIL's vehicle, and they would have known plaintiff then jumped from his truck and ran off in a further attempt to elude capture by law enforcement.  Defendants LAMBERT and MASSENGIL would have observed defendant ROGERS' unsuccessful

attempt(s) to subdue plaintiff by the use of lesser force, *i.e.*, the taser, without success, which fact has been set out by plaintiff.

Under these circumstances, forcibly taking plaintiff down to the ground was not clearly unreasonable and the injuries to plaintiff's wrist and knee appear to be *de minimis*. In addition, plaintiff partly attributes the pain in his left wrist to "past injuries." Whatever those past injuries may have been, the left wrist injury plaintiff complains of clearly did not arise directly and only from the challenged use of force. *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012)(citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); *Ikerd v. Blair*, 101 F.3d 430, 544-34 (5th Cir. 1996).

Also, as required at this stage of the proceedings, the Court credits plaintiff's allegation that the break of his fifth metacarpal and the hardware in his fourth metacarpal in his right hand, which were not discovered until June of 2014, occurred as a result of this October 2011 use of force. While this injury appears to be more than *de minimis*, plaintiff has not shown the force which was utilized and which, at this stage, is assumed to have caused such injury, was excessive to the need. Plaintiff's own account of the incident shows plaintiff was "actively resisting arrest [and] attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. Plaintiff's continued efforts to resist officers justified the use of further force to subdue him. The use of a lesser amount of force by means of one or more taser discharges had been completely unsuccessful. Under these circumstances, the actions of defendant LAMBERT, acting with defendant ROGERS, in taking plaintiff down and in utilizing a chokehold[1] to subdue plaintiff were not

---

[1]Plaintiff says he was choked by LAMBERT and ROGERS until he lost consciousness. The Court construes this to mean a chokehold was utilized.

clearly unreasonable.  Plaintiff's alleged injuries were the type of injuries one would reasonably

expect might occur under the circumstances.  In examining a similar case, the Fifth Circuit held

that police officers who used an electronic stun gun three or four times and utilized a chokehold

on a suspect did not violate any clearly established Fourth Amendment right of the suspect and

were entitled to qualified immunity from a section 1983 claim stemming from the suspect's

death, where the suspect had ignored their warnings, remained unfazed by the use of the stun

gun, and physically struggled with the officers.  *Williams v. City of Cleveland, Mississippi*, 736

F.3d 684, 688 (5th Cir. 2013).  In this context, plaintiff's loss of breath, dizziness, and eventual

loss of consciousness are not sufficient to allege a constitutional violation.  *Bremer*, 180 F.3d at

704 (concluding the first choking that occurred did not result in cognizable injury).

  As to plaintiff's claim that defendants MASSENGIL and LAMBERT applied the

handcuffs too tightly, plaintiff alleges no fact that shows either defendant was aware the

handcuffs were too tight.  Plaintiff claims he was unconscious when the handcuffs were applied

and states he was unable to speak during the brief time he was conscious in the Emergency Room

before he was sedated by medical personnel, examined, and released to be taken to jail.  Given

plaintiff's energetic and sustained attempts to resist capture and/or being subdued by police, the

application of handcuffs was not clearly unreasonable.  If the handcuffs were applied too tightly,

plaintiff has not alleged facts showing the officers were aware of that fact or that his injuries

were more than *de minimis*.  *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir.

2001)("handcuffing too tightly, without more, does not amount to excessive force"); *Tarver v.*

*City of Edna*, 410 F.3d 745, 751-52 (5th Cir. 2005)(plaintiff failed to satisfy the injury

requirement of a §1983 claim where there was no allegation of harm greater than de minimis from the handcuffing).

Plaintiff claims defendant LAMBERT was deliberately indifferent to his serious medical needs because, after plaintiff was discharged by medical personnel at the hospital, LAMBERT assisted in transporting plaintiff to the jail and booked him in, even though plaintiff was unable to care for himself and there was insufficient staff at the jail to care for him.

At the time he was booked into jail, plaintiff appears to have been a pre-trial detainee. "[P]retrial detainees have a constitutional right ... not to have their serious medical needs met with deliberate indifference on the part of the confining officials." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir.2001).  Because there is no constitutionally significant distinction between the rights of pretrial detainees and convicted inmates to basic human needs, including medical care, the Fifth Circuit concluded in *Hare v. City of Corinth, Miss.*, that a jail official's constitutional liability to pretrial detainees for episodic acts or omissions should be measured by a standard of subjective deliberate indifference as enunciated by the Supreme Court in *Farmer*[2]. *Hare v. City of Corinth, Miss.*, 74 F.3d 633 (5th Cir. 1996).  Deliberate indifference is defined as a failure to act where prison officials have knowledge of a substantial risk of serious harm to inmate health or safety.  *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994).  Plaintiff has alleged no fact which shows defendant LAMBERT knew of facts showing the transport of plaintiff to and booking into the jail constituted a "substantial risk of serious harm to [plaintiff's] health or safety."   In fact, plaintiff does not allege facts showing he suffered a serious harm as a result of LAMBERT's act(s) in this respect.  Plaintiff was

---

[2]*Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128 L.Ed.2d 811 (1994).

discharged from this hospital by hospital medical personnel, and defendant LAMBERT was entitled to rely on their medical judgment.  LAMBERT's subsequent actions in transporting plaintiff to the jail and booking him were not clearly unreasonable.

**CLAIMS UNDER FEDERAL CRIMINAL STATUTES**

Plaintiff claims defendants LAMBERT and MASSENGIL, along with defendants ROGERS and HINDERS conspired to deprive him of his rights under Title 18 United States Code, section 241.  Section 241 criminalizes conspiracy against the free exercise of a constitutional right and does not provide for civil remedies.  *Fierro v. Robinson*, 405 Fed.Appx. 925, 926 (5th Cir. 2010); *Mackey v. Astrue*, 486 Fed.Appx. 421, 422-23 (5th Cir. 2012).

Plaintiff also claims the defendants deprived him of his rights without due process in violation of Title 18, United States Code, section 242.  Section 242 is also a criminal statute and does not create a civil remedy.  *See, Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994); *Tsabbar v. Booth*, 293 F.Supp.2d 328, 335 (S.D.N.Y. 2003).

Plaintiff's claims under these federal criminal statutes lack an arguable basis in law and are frivolous.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

**CONSPIRACY CLAIMS**

Plaintiff also claims defendants LAMBERT, MASSENGIL, and HINDERS conspired to violate his civil rights under section 1983.  To state a conspiracy claim under section 1983, plaintiff must allege facts showing "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds as recognized by Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992).  It is well settled that

" 'mere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a

substantial claim of federal conspiracy."  *McAfee v. 5th Circuit Judges*, 884 F.2d 221 (5th

Cir.1989), *cert. denied*, 493 U.S. 1083, 110 S.Ct. 1141, 107 L.Ed.2d 1046 (1990).  Plaintiff has

failed to allege material facts to support his claim of conspiracy.  Plaintiff has failed to state a

claim on which relief can be granted.

**STATE LAW CLAIMS**

As noted at the beginning of this analysis, plaintiff's state law claims against, in relevant

part, defendants LAMBERT and MASSENGIL, have previously been dismissed.

As to plaintiff's claims against LAMBERT and MASSENGIL for assault under Section

22.01 of the Texas Penal Code, the Penal Code does not create private causes of action, and a

crime victim "does not have standing to participate as a party in a criminal proceeding.  TEX.

CONST. Art. I, §30(e); TEX. CODE CRIM. PROC. Art. 56.02(d).  Plaintiff's claims against

LAMBERT and MASSENGIL based upon Section 22.01 of the Texas Penal Code lack an

arguable basis in law and are frivolous.  *See Hamilton v. Pechacek*, 319 S.W.3d 801, 812-13

(Tex. App. – Ft. Worth 2010, no pet.) (holding the plaintiff's claims based on Texas Penal Code

sections 22.01 (assault) and 39.03 (official oppression) were not private causes of action and

such claims were frivolous.).

Plaintiff's claim against defendant MASSENGIL for alleged violation of Section 22.05

(Deadly Conduct) of the Texas Penal Code fails for the same reason and is frivolous.

## CONCLUSION

Construing all of plaintiff's well-pleaded facts and documents submitted with his

complaint to be true and viewing them in the light most favorable for plaintiff, the Magistrate

Judge finds Patrick Lambert's Rule 12(b)(6) Motion to Dismiss with Supporting Brief [D.E. 9],

Individually, and Jeremiah James Massengil's Rule 12(b)(6) Motion to Dismiss [D.E. 8], both

filed November 18, 2013, have merit.

It is the RECOMMENDATION of the Magistrate Judge to the United States District

Judge that Patrick Lambert's Rule 12(b)(6) Motion to Dismiss with Supporting Brief [D.E. 9],

Individually, and Jeremiah James Massengil's Rule 12(b)(6) Motion to Dismiss [D.E. 8], both

filed November 18, 2013, should be GRANTED and plaintiff's remaining claims against

defendants LAMBERT and MASSENGIL be dismissed pursuant to Rule 12(b)(6) for failure to

overcome defendants' entitlement to qualified immunity, for failure to state a claim on which

relief can be granted, and with prejudice as frivolous.

**Plaintiff may file Objections as provided under the Notice of Right to Object below;
however, plaintiff is instructed to file all of his objections at one time in a single, timely
pleading and not piecemeal in multiple pleadings.**

<u>INSTRUCTIONS FOR SERVICE</u>

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 8th day of August, 2014.


CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## \* <u>NOTICE OF RIGHT TO OBJECT</u> \*

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).