IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

_____

| | | |
|---|---|---|
| JIMMY F. McHENRY, PRO SE, | § | |
| TDCJ-CID No. 1811322, | § | |
| Previous TDCJ-CID No. 1060917, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:13-CV-0228-J |
| | § | |
| STINNETT POLICE DEPARTMENT ET AL., | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION TO
GRANT, IN PART, AND DENY, IN PART,
DEFENDANT DRENNAN ROGERS' RULE 12(b)(6) MOTION TO DISMISS**

Before the Court for consideration is Defendant Drennan ROGERS' Rule 12(b)(6)

Motion to Dismiss filed November 18, 2013 [D.E. 7] in the above-referenced and numbered

cause.

Plaintiff filed his response on December 10, 2013, entitled "Reply and Objection to

Dismiss." Further, on August 4, 2014, plaintiff filed a document entitled "Plaintiff's Disclosure

of Evidence and Reply" by which he presents a radiologist's report on X-rays taken June 13,

2014 of plaintiff's right hand. The radiologist's findings are: 1. fractured hardware, fourth

metacarpal, with fracture through the distal aspect of the compression plate, seen through the

interval between the distal and middle screw; and 2. healing fracture involving the fifth

metacarpal. Plaintiff argues this injury was sustained in the use of force which occurred October

29, 2011 and which forms the basis of the instant lawsuit.

Plaintiff's claims against defendant STINNETT POLICE DEPARTMENT, defendant

HUTCHINSON COUNTY SHERIFF'S OFFICE and defendant HUTCHINSON COUNTY JAIL

have been dismissed.  Plaintiff's federal civil rights claims against defendants ROGERS, LAMBERT, MASSENGIL, and FARBRO in their official capacities have been dismissed, along with plaintiff's state law tort claims against these defendants in both their official and individual capacities.  Further, plaintiff's claims for declaratory relief, injunctive relief, punitive damages and for attorney's fees have been dismissed.

## CLAIMS

Plaintiff alleges that, just before midnight on October 28, 2011, he drove to his sister's, Linda Tipps, to ask to spend the night.  He says he parked his truck behind her travel trailer.  At some point, a neighbor, Adrian Brocketts, reported unusual activity on Linda Tipps' property. After sitting in his truck and smoking a cigarette for half an hour, plaintiff says he called the Tipps residence but, due to bad cellphone reception, the "conversation was disrupted."  Plaintiff says he went to the front door and knocked, but no one answered, so he turned and began walking back to his truck.  He says he was "where the lighting was darker" when defendant Officer ROGERS approached him at about 12:30 a.m. of what was then October 29, 2011.  Plaintiff says ROGERS tasered plaintiff and plaintiff "felt something strike [him] with a sudden intense jolt, and severe shock hurting [him,] [and he] felt like [he] was shot."

Plaintiff says he became frightened, ran back to his truck and drove back toward the city of Stinnett.  Plaintiff states that, as he approached Stinnett, he noticed a police vehicle was following him, which was soon joined by several other police cruisers.  Plaintiff says he drove through town until he came to a convenience store "where [he] felt was a safe place to stop" and where it was well lighted.  He says he ran out of gas there and when he "applied [his] brakes hard to rapidly stop," a patrol car "intentionally and recklessly struck [his] truck" from behind.

Plaintiff states he then got out of his truck and ran from the officers until he was "struck by something with intense jolts, with intense pain to [his] body." He says he was then taken to the ground where he experienced severe pain in his left wrist "from past injuries." He says he also experienced pain in his right knee and felt something pop. By his August 4, 2014 pleading, plaintiff alleges the fractured hardware in his fourth metacarpal and the healing fracture of his fifth metacarpal, on his right hand rather than on his left, which were discovered by a June 13, 2014 x-ray, were also caused at this time. Plaintiff alleges he was choked repeatedly by ROGERS and LAMBERT until he lost consciousness.

Plaintiff says he then regained consciousness for a brief time in the Emergency Room, but could not speak. Plaintiff states he was examined by a doctor who administered Valium in a dosage plaintiff contends was excessive and that he was discharged from the hospital on October 29, 2011 at 11:05 a.m.

Plaintiff claims Officer LAMBERT, defendant ROGERS, and the Fire Chief should never have agreed to move plaintiff from the hospital after his discharge by hospital medical staff because there was not sufficient medical staff at the jail to care for plaintiff and he could not care for himself because of his heavily-sedated and injured condition.

Plaintiff says he remained unconscious until October 31, 2011 at around 11:40 a.m. Plaintiff says he awoke with severe pain in his wrists and his hands were numb and tingling. Plaintiff says his head and body hurt and his knee was popping. Plaintiff requested medical attention and an attorney. He was provided a tray of food and, later, was seen by a doctor who examined him and dispensed some aspirin. On an unspecified date, plaintiff was taken to a

doctor in Borger who had x-rays taken at the Golden Plains Community Hospital, but plaintiff does not identify what part of his body was x-rayed nor does he state what the results were.

Plaintiff says he was not advised of his rights until October 31, 2011 at 11:40 a.m. when he appeared before Shila Hart, Hutchinson County Justice of the Peace, Precinct 1.

Plaintiff next alleges that on an unspecified date, defendant ROGERS called an individual identified only as Matt Armstrong of Refinishing Systems and authorized them to tow plaintiff's 1989 Chevy Pickup and to impound the truck.  Plaintiff says his pastor and his nephew each tried to retrieve plaintiff's personal property but were denied.  Plaintiff alleges Matt Armstrong of Refinishing Systems then held an "illegal government sale" and sold plaintiff's tools worth $5,000.00, his regular clothing worth $1,000.00, and his work clothes worth $1,000.00.  Plaintiff says this was a conversion and a breach of contract as the bailee owed the bailor a duty to return the property.  Plaintiff says ROGERS and Matt Armstrong failed to provide him notice and due process in the form of a "post-deprivation hearing, [and] an opportunity to be heard at a meaning time and . . . manner before seizure by a neutral magistrate . . .."

Plaintiff also alleges defendant ROGERS had plaintiff "falsely imprisoned under a state jail statute that is in violation of Ex Post Facto Laws due to the fact the state jail statute was never intended to have the definition of the statute altered to increase punishment by aggravating the statute thereby re-defining it by re-defining it to make a greater offense of a third degree offense, when the statute is only 180 days to 2 years maximum, and was never intended to be a felony of a third degree offense . . .."

## STANDARD OF REVIEW UNDER RULE 12(b)(6)

Rule 12(b)(6) provides for dismissal of an action for failure to state a claim upon which relief can be granted.  FED.R.CIV.PRO. 12(b)(6).  To defeat the motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 540, 570, 127 S.Ct. 1955, 167 L.E.2d 292 (2007).  The plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id*. (citation and footnote omitted).  However, legal conclusions need not be accepted as true.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

"[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial.  A statement of facts that merely creates a suspicion that the pleader might have a right of action is insufficient."  *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).  If the complaint lacks a required element which is a prerequisite to obtaining relief, dismissal is proper.  *Clark v. Amoco Prods. Co.*, 794 F.2d 967, 970 (5th Cir. 1986).  "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Southern Christian Leadership Conference v. Supreme Court of the State of Louisiana*, 252 F.3d 781, 786 (5th Cir. 2001)(quoting *Fernandez-Montez v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir.1993)).

In reviewing a motion for 12(b)(6) dismissal, the court must consider all of plaintiff's well-pleaded facts as true and view them in the light most favorable to the plaintiff.  *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004) (citing *Great Plains Trust Co. v. Morgan, Stanley,*

*Dean, Witter, & Co.*, 313 F3d 305, 312 (5th Cir. 2002).  All reasonable inferences must be drawn

in favor of the non-movant's claims, *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th

Cir. 1997); and the *pro se* litigant's pleadings should be afforded a liberal construction, even if

they are inartfully phrased.  *See Erickson . Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 164 L.Ed.2d

1081 (2007).

Dismissal for failure to state a claim does not require a determination that, beyond a

doubt, the plaintiff can prove no set of facts in support of his claim that would entitle him to

relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929

(2007).  Instead, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to 'state a claim for relief that is plausible on its face.' " *Ashcroft v.

Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citation omitted).

## THE LAW AND ANALYSIS

Defendant ROGERS has raised the defense of qualified immunity in his motion to

dismiss.  "[G]overnment officials performing discretionary functions generally are shielded from

liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*,

457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  Qualified immunity is an affirmative

defense, but the plaintiff bears a heightened burden to negate the defense once it is properly

raised.  *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

In determining whether the plaintiff has overcome the defense of qualified immunity, the

court considers whether the plaintiff asserted a violation of a constitutional right.  Analysis at this

stage is performed under the "currently applicable constitutional standards." *Rankin v.

*Klevenhagen*, 5 F.3d 103, 106 (5th Cir. 1993).  The second prong of the qualified immunity test is whether the constitutional right alleged to have been violated was clearly established at the time of the incident; and, if so, whether the conduct of the defendant was objectively unreasonable in  light of contemporaneous clearly-established law.  *Hare v. City of Corinth*, 135 F.3d 320, 328 (1998).  Analysis under the second prong requires a court to measure the objective reasonableness of an official's conduct with reference to the law as it existed at the time of the conduct in question.  *Id*. (citing *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993).

In deciding which of the two prongs to address first, the court may utilize its sound discretion in light of the circumstances in the particular case at hand.  *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009).

**UNLAWFUL ARREST AND EXCESSIVE FORCE CLAIMS**

Excessive force claims are analyzed under the reasonableness standard of the Fourth Amendment.  *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012)(citing *Graham v. Connor*, 490 U.S. 386, 395, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).  In the Fifth Circuit, a plaintiff asserting an excessive force claim must show:  (1) a physical injury; (2) which resulted directly and only from the use of force that was clearly excessive to the need; and (3) the excessiveness of which was objectively unreasonable.  *Id.*; *Ikerd v. Blair*, 101 F.3d 430, 544-34 (5th Cir. 1996).  The plaintiff is not required to show a significant injury for Fourth Amendment excessive force analysis, but it is necessary that the plaintiff suffered some injury that is more than *de minimis*.  *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999).

Claims of excessive force involve a fact intensive inquiry.  *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012).  Courts do not judge the reasonableness of the officers' use of force from the safety of their chambers "with the 20/20 vision of hindsight," but "from the perspective

of a reasonable officer on the scene . . . ." *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct.

1865, 104 L.Ed.2d 443 (1989).  The Court must consider "whether the officers' actions [we]re

'objectively reasonable' in light of the facts and circumstances confronting them, without regard

to their underlying intent or motivation." *Id*.  Among relevant factors to consider are "the

severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the

officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by

flight." *Graham*, 490 U.S. at 396.

      Each individual officer's actions are examined independently to determine whether that

defendant officer is entitled to qualified immunity.  *Meadours v. Ermel*, 483 F.3d 417, 421-22

(5th  Cir. 2007).  What constitutes an injury in an excessive force claim is subjective and is

defined entirely by the context in which the injury arises.  *Williams v. Bramer*, 180 F.3D 699, 704

(5th Cir. 1999).

      Defendant ROGERS is accused of discharging a taser at plaintiff on two separate

occasions.  At this stage, the Court accepts plaintiff's allegations as true for purposes of this

12(b)(6) review.

      The first alleged taser discharge was when ROGERS responded to the report made by

Adrian Brockett about activity on Linda Tipps' property.  Plaintiff, at paragraph 61 of his

complaint, states defendant ROGERS "radioed Deputy HINDERS whom [sic] was issued the call

for service but officer radioed Deputy HINDERS to intercept the service location . . .."  By his

December 10, 2013 response to Rogers' motion to dismiss, plaintiff argues defendant ROGERS'

actions on the Tipps property were performed outside of his geographic jurisdiction, without

probable cause, and with no crime in plain view.  Plaintiff says, nevertheless, ROGERS

"unlawfully unidentified [sic] shot plaintiff with a Taser that was malicious and sadistic to cause harm, and did not have Deputy Hinders present with territorial geographic jurisdiction making ROGERS' arrest illegal."

Plaintiff contends that, without the presence of Deputy HINDERS, defendant ROGERS had no authority to respond to the call or investigate plaintiff's presence or his activity on Linda Tipps' property which is apparently outside the Stinnett City limits.  Although the Texas Court of Criminal Appeals has recognized a peace officer's authority is limited to his own geographic jurisdiction, an exception is made in sections 341.001 and 341.021 of the Local Government Code, which provides that a city police officer has the same power and jurisdiction as the county sheriff.  TEX.LOC.GOV'T CODE ANN. §§ 341.001, 341.021 (West).

The jurisdiction of city police "under this statute has been interpreted to extend county-wide, not only to the power to arrest, but also to perform all acts necessary for the suppression of crime." *Thomas v. State*, 864 S.W.2d 193 (Tx.App. – Texarkana 1993, pet. ref'd.) (citing *Morris v. State*, 802 S.W. 2d 19 (Tex.App. – Houston [1st Dist.] 1990, pet. ref'd (Mar. 16, 1994)); *Bacon v. State*, 762 S.W.2d 653 (Tex.App. – Houston [14th Dist.] 1988, pet. ref'd)).  Defendant ROGERS had full authority to act anywhere in Hutchinson County just as he had authority to act within the city limits of Stinnett.  Therefore, defendant ROGERS was authorized to respond to the call by Adrian Brockett and investigate plaintiff's actions on Linda Tipps' property and to the extent some part of plaintiff's 1983 claim against defendant ROGERS is based upon defendant acting outside his jurisdiction, the claim is without merit.

Plaintiff also alleges, however, that when he arrived at Linda Tipps' property, he parked his truck behind a travel trailer and then simply sat in his truck, smoking, for half an hour.

Plaintiff says he then called the Tipps residence and, after that call ended, he went to the front door and knocked.  Receiving no response, plaintiff did not return to his truck and leave, but walked part-way back, stopping in the shadows.

Plaintiff says he was standing in the shadows (an area "where the lighting was darker") when defendant ROGERS suddenly appeared, startling plaintiff and pointing a gun at him. Plaintiff says ROGERS started shooting and plaintiff felt something strike him "with a sudden intense jolt and severe shock hurting [him] felt like [he] was shot."  Whatever effect the taser had on plaintiff, it did not incapacitate him as he immediately ran to his truck and got in, locking the door and driving back toward Stinnett.

Plaintiff's allegation as to this first encounter with defendant ROGERS, however, is that defendant ROGERS tased him, causing him to suffer pain, without adequate reason.  The defendant's primary argument with respect to the initial use of force is that the taser did not inflict any injury.  Defendant has not argued there is any evidence presently before the Court that the use of the taser was justified.  Since the Court cannot, at this stage go outside plaintiff's pleadings, and since defendant ROGERS' reasons for using the taser are not in the record before the Court, plaintiff's allegation controls.  If defendant ROGERS wishes to present facts showing the initial use of force was justified, he must do that possibly at summary judgment or trial.  It is plaintiff's complaint which controls at this stage and his complaint does not provide any information as to the reason he was tased, although the Court notes that plaintiff's complaint does not contain the exhibits he references in his complaint, including the police offense reports about the arrest.  Therefore, based upon the complaint, defendant ROGERS' motion to dismiss with respect to this first use of force should be denied.

Nevertheless, it is abundantly clear that ROGERS' other actions after plaintiff fled were those of a reasonable officer under the same circumstances and are protected by qualified immunity.

First, apparently referring to the period he was on Linda Tipps' property, plaintiff argues "he was entitled to be free from unreasonable search and seizures by Officer Rogers['] intrusion upon plaintiff's solitude."

A reasonable officer in defendant ROGERS' position would know there had been a report of suspicious activity at Linda Tipps' property in the dead of night, and would have seen plaintiff in the yard, standing in the shadows.

Without making a determination whether there was probable cause to arrest plaintiff at this point, there were clearly sufficient articulable facts to support a suspicion that criminal activity was afoot, justifying an investigatory stop pursuant to *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).  Adrian Brockett's report[1] coupled with plaintiff's extended presence on the Tipps' property simply sitting in his car for half an hour, then plaintiff's knocking once and not departing the property when there was no answer, and his continued presence standing in the shadows, all were sufficient to justify questioning by defendant ROGERS.  Officer ROGERS had sufficient articulable facts to support a *Terry* investigatory stop.

As to plaintiff's complaint about his arrest, defendant ROGERS would have seen plaintiff flee from the scene in a truck traveling toward the city of Stinnett.  He would have known that, while still outside Stinnett, that truck was pursued by a police vehicle, and did not pull over and stop, even after several more police cruisers joined the pursuit.  In fact, plaintiff did not stop until

---

[1] Plaintiff contends, in his response, that Adrian Brockett's report was made to harass plaintiff.  Nevertheless, plaintiff does not state any fact that shows police had any reason to discount her report.

he ran out of gasoline and was involved in the collision at the convenience store. A reasonable officer in defendant ROGERS' position would have further known that, after the crash, plaintiff fled on foot.

"Headlong flight – wherever it occurs – is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such." *Illinois v. Wardlow*, 528 U.S. 119, 124, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). Following the crash and plaintiff's further attempt at flight, there was clearly sufficient probable cause to sustain an arrest.

Plaintiff claims defendant ROGERS utilized excessive force in effecting this post-crash arrest by tasing plaintiff up to three times and by assisting defendant LAMBERT in applying a chokehold until plaintiff lost consciousness. It is clear from plaintiff's own account that plaintiff was actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Although the use of a taser earlier had been ineffective, defendant ROGERS is alleged to have tried it again one or more times, with no effect. After plaintiff had been forcibly taken to the ground, plaintiff alleges ROGERS assisted LAMBERT in applying a chokehold until plaintiff lost consciousness. Plaintiff complains he suffered loss of breath, dizziness, and loss of consciousness. In examining a similar case, the Fifth Circuit held that police officers who used an electronic stun gun three or four times and utilized a chokehold on a suspect did not violate any clearly established Fourth Amendment right of the suspect and were entitled to qualified immunity from a section 1983 claim stemming from the suspect's death where the suspect ignored their warnings, remained unfazed by the use of the stun gun, and physically struggled with the officers. *Williams v. City of Cleveland, Mississippi*, 736 F.3d 684, 688 (5th Cir. 2013). In this context, plaintiff's loss of breath, dizziness, and eventual loss of consciousness are not

sufficient to allege a constitutional violation under the circumstances of this case.  *Bremer*, 180

F.3d at 704 (concluding the first choking that occurred did not result in cognizable injury).

Plaintiff's allegations do not show defendant ROGERS' actions with respect to plaintiff's

post-crash tasing or the chokehold were unreasonable, and defendant ROGERS is clearly entitled

to qualified immunity with respect to his actions in arresting and subduing plaintiff after

plaintiff's flight.

**DELIBERATE INDIFFERENCE TO PLAINTIFF'S MEDICAL NEEDS**

Plaintiff claims defendant ROGERS was deliberately indifferent to his serious medical

needs when he assisted in plaintiff's transport from the hospital to the jail, following plaintiff's

discharge by hospital medical personnel.  Plaintiff contends there was not sufficient medical staff

at the jail to care for him and he was unable to care for himself.

At the time he was booked into jail, plaintiff appears to have been a pre-trial detainee.

"P]retrial detainees have a constitutional right ... not to have their serious medical needs met with

deliberate indifference on the part of the confining officials."  *Thompson v. Upshur Cnty., Tex.*,

245 F.3d 447, 457 (5th Cir.2001).  Because there is no constitutionally significant distinction

between the rights of pretrial detainees and convicted inmates to basic human needs, including

medical care, the Fifth Circuit concluded in *Hare v. City of Corinth, Miss.*, that a jail official's

constitutional liability to pretrial detainees for episodic acts or omissions should be measured by

a standard of subjective deliberate indifference as enunciated by the Supreme Court in *Farmer v.*

*Brennan*[2].  *Hare v. City of Corinth, Miss.*, 74 F.3d 633 (5th Cir. 1996).  Deliberate indifference is

defined as a failure to act where prison officials have knowledge of a substantial risk of serious

---

[2]*Farmer v. Brennan*, 511 U.S. 825, 837-43, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994).

harm to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 1981, 128

L.Ed.2d 811 (1994). Plaintiff has alleged no fact which shows defendant ROGERS knew of facts

indicating the transport of plaintiff to and booking into the jail constituted a "substantial risk of

serious harm to [plaintiff's] health or safety." In fact, plaintiff does not allege facts showing he

suffered serious harm as a result of ROGERS' act(s) in this respect. In light of plaintiff's

discharge by hospital medical personnel, defendant ROGERS' action in transporting plaintiff to

the jail was not clearly unreasonable.

**UNREASONABLE DELAY IN PROBABLE CAUSE DETERMINATION**

Plaintiff claims defendant ROGERS, the Sheriff, and unidentified Hutchinson County

Jailers restrained plaintiff for 60 hours without a probable cause determination, which, he

contends, should have occurred within 48 hours of the arrest. Plaintiff's own allegations show he

was taken to the hospital immediately after his October 29, 2011 arrest and was sedated while at

the hospital. Plaintiff states he was discharged at 11:05 a.m. on October 29, 2011 and booked

into the jail, where he remained unconscious until the morning of October 31, 2011. He says he

was taken before Shila Hart, Hutchinson County Justice of the Peace, Precinct 1 at about

11:40 a.m. where a probable cause determination was made

Accepting plaintiff's facts as he has alleged them, the period from his being booked into

the jail and his probable cause hearing appears to be about 48 hours. Plaintiff's factual

allegations do not support his conclusion that it took 60 hours for him to receive a probable cause

determination.

In any event, even if there was a period of sixty hours before the probable cause

determination, plaintiff was unconscious until the morning of October 31, 2011, and any earlier

hearing would have been useless. Plaintiff's hearing had to be delayed until he regained

consciousness and was able to understand the proceeding.  The minimal delay, if there was one, was warranted because there was a legitimate basis for any delay which occurred in conducting a probable cause hearing in this case.  *See Kanekoa v. City & Cnty of Honolulu*, 879 F.2d 607 (9th Cir. 1989); *Jones v. Lowndes Cnty*, 678 F.3d 344, 352-53 (5th Cir. 2012).

Plaintiff has alleged no fact which shows the delay, if any, was any longer than necessary and he has not alleged any fact showing defendant ROGERS was responsible for the delay or any portion thereof.

**PROPERTY AND §1983 CONSPIRACY CLAIMS**

Plaintiff alleges defendant ROGERS authorized the tow of plaintiff's 1989 Chevy pickup truck by Matt Armstrong, the owner of Refinishing Systems, who performed a non-consent tow and impounded plaintiff's truck.  Plaintiff says he believes he gave his pastor and nephew authority to retrieve his personal property but they were each refused by someone who is not identified.  Plaintiff alleges Matt Armstrong "held an illegal government sale and sold all of the plaintiff's property" consisting of $5000.00 in tools, $1,000.00 in regular clothing, and $1,000.00 in work clothing that had been in plaintiff's truck.  Plaintiff says this was the tort of conversion and Armstrong owed plaintiff a duty as the bailee to return plaintiff's property to him.

Plaintiff further asserts, "This is a breach of contract that was owed to the Plaintiff whom worked closely with Officer ROGERS to deprive plaintiff of his truck and property."

Plaintiff says ROGERS and Armstrong "failed to give the plaintiff a notice, post-deprivation hearing, an opportunity to be heard at a meaningful time and in a meaningful manner before seizure by a nutral [sic] magistrate for determination with with [sic] due process owed to plaintiff.

Plaintiff states he did not receive notice because he was in jail and unable to check his mail, therefore, he was deprived of equal protection of the law.

Initially, the Court notes plaintiff has not named Matt Armstrong as a defendant in this cause and he has not been served.  No breach of contract or conversion action against Armstrong is included in the present action.

With respect to defendant ROGERS' authorization of the non-consensual tow by Armstrong, plaintiff has alleged no fact to show that this was a wrongful act or to defeat defendant ROGERS' qualified immunity with respect to this authorization.  Plaintiff's complaint that he was deprived of due process in relation to the sale does not involve defendant ROGERS. Instead, this claim appears to stem from plaintiff's failure to receive notice.  Plaintiff says, however, he didn't receive notice because he was in jail and couldn't check his mail.  Plaintiff alleges no fact that shows defendant ROGERS was responsible for ensuring notice of the sale was sent to plaintiff at any specific address or for ensuring that plaintiff received it.  More importantly, plaintiff has alleged no specific act by ROGERS which caused the alleged failure to receive notice.

As to plaintiff's contention that Armstrong worked closely with Officer Drennan ROGERS to deprive plaintiff of his truck and property, this appears to be an attempt to allege a conspiracy between ROGERS and Armstrong.  To state a conspiracy claim under section 1983, plaintiff must allege facts showing "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy by a party to the conspiracy." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds as recognized by Martin v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992).  It is well settled that

" 'mere conclusory allegations of conspiracy cannot, absent reference to material facts,' state a substantial claim of federal conspiracy." *McAfee v. 5th Circuit Judges*, 884 F.2d 221 (5th Cir.1989), *cert. denied*, 493 U.S. 1083, 110 S.Ct. 1141, 107 L.Ed.2d 1046 (1990).  Plaintiff has failed to allege material facts to support his claim of conspiracy and has, therefore, failed to state a claim on which relief can be granted.

The only connection plaintiff alleges between defendant ROGERS and the eventual sale of plaintiff's vehicle is that ROGERS authorized the towing of the vehicle.  The act of towing plaintiff's vehicle from the crime scene was entirely reasonable and plaintiff has not shown there was any alternative available.

**CLAIMS UNDER FEDERAL CRIMINAL STATUTES**

Plaintiff claims defendant ROGERS, along with defendants LAMBERT, MASSENGIL, and HINDERS conspired to deprive him of his rights under Title 18 United States Code, section 241.  Section 241 criminalizes conspiracy against the free exercise of a constitutional right and does not provide for civil remedies.  *Fierro v. Robinson*, 405 Fed.Appx. 925, 926 (5th Cir. 2010); *Mackey v. Astrue*, 486 Fed.Appx. 421, 422-23 (5th Cir. 2012).

Plaintiff also claims the defendants deprived him of his rights without due process in violation of Title 18, United States Code, section 242.  Section 242 is also a criminal statute and does not create a civil remedy.  *See, Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 511 (2d Cir. 1994); *Tsabbar v. Booth*, 293 F.Supp.2d 328, 335 (S.D.N.Y. 2003).

Plaintiff's claims under these federal criminal statutes lack an arguable basis in law and are frivolous.  *Neitzke v. Williams*, 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

**EX POST FACTO**

Plaintiff claims defendant ROGERS had plaintiff "falsely imprisoned under a state jail statute that is in violation of Ex Post Facto Laws" due to the fact that the statute was never intended to increase the punishment to that of a third degree offense.  Defendant has interpreted this claim as an attack on plaintiff's sentence and/or conviction and that plaintiff is contending he was charged "with a crime which should have been a third degree felony, but was categorized under a new statute as a fourth degree felony instead."   Plaintiff's December 10, 2013 response does not expand on or clarify this claim, nor does it reply to defendant's argument.

Having carefully reviewed plaintiff's allegations, it appears to the Court that his Ex Post Facto claim is an attack on his sentence and/or conviction.  For this reason, plaintiff's claim is barred by application of the *Heck*[3] doctrine requiring favorable termination of the underlying challenge to the sentence or conviction before a civil rights cause of action can accrue.  *Boyd v. Biggers*, 31 F.3d 279 (5th Cir. 1994).  For this reason, plaintiff's Ex Post Facto claim "is legally frivolous unless the conviction or sentence at issue has been reversed, expunged, invalidated, or otherwise called into question."  *Hamilton v. Lyons,* 74 F.3d 99, 102 (5th Cir.1996).

This claim should be dismissed as frivolous with prejudice to being asserted again until the *Heck* conditions are met.  *Johnson v. McElveen*, 101 F.3d 423, 424 (5th Cir. 1996).

**CLAIMS UNDER TEXAS CONSTITUTION**

Plaintiff argues defendant ROGERS violated his right to be free from unreasonable search and seizure as set forth in the Texas State Constitution Art. 1-9.  In *City of Beaumont v. Bouillion*, 896 F.2d 143, 147 (Tex. 1995), the Texas Supreme Court noted Texas has no

---

[3]*Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994).

provision comparable to § 1983, and held there is no implied private right of action for damages arising under the free speech and free assembly sections of the Texas Constitution.  That ruling has since been expanded to recognize there is "no private cause of action against a governmental entity or its officials for money damages relating to alleged violations of Texas constitutional rights."  *See Hamilton v. Pechacek*, 319 S.W.3d 801, 812-13 (Tex. App. – Ft. Worth 2010, no pet.) .

**CLAIMS UNDER THE TEXAS PENAL CODE**

Plaintiff also asserts claims under Sections 22.01 (Assault and Aggravated Assault), 15.02 (Conspiracy), and 39.03 (Official Oppression) of the Texas Penal Code.   The Texas Penal Code does not create private causes of action, and a crime victim "does not have standing to participate as a party in a criminal proceeding.  TEX. CONST. Art. I, §30(e); TEX. CODE CRIM. PROC. Art. 56.02(d).  Plaintiff's claims against defendant ROGERS based upon sections of the Texas Penal Code lack an arguable basis in law and are frivolous.  *See Hamilton v. Pechacek*, 319 S.W.3d 801, 812-13 (Tex. App. – Ft. Worth 2010, no pet.) (holding the plaintiff's claims based on Texas Penal Code sections 22.01 (assault) and 39.03 (official oppression) were not private causes of action and such claims were frivolous.).

## CONCLUSION

Construing all of plaintiff's well-pleaded facts and documents submitted with his complaint to be true and viewing them in the light most favorable for plaintiff, the Magistrate Judge finds defendant Drennan Rogers' Rule 12(b)(6) Motion to dismiss [D.E. 7], filed November 18, 2013, has merit and should be granted, in part.

It is the RECOMMENDATION of the Magistrate Judge to the United States District Judge that defendant Drennan Rogers' Rule 12(b)(6) Motion to dismiss [D.E. 7], filed

November 18, 2013, be GRANTED, IN PART, AND DENIED, IN PART; and that, with the sole

exception of plaintiff's claim of excessive force stemming from the use of a taser on plaintiff

when defendant ROGERS initially came in contact with plaintiff, all of plaintiff's remaining

claims against defendant DRENNAN ROGERS be dismissed pursuant to Rule 12(b)(6) for

failure to overcome defendant's entitlement to qualified immunity, for failure to state a claim on

which relief can be granted, with prejudice as frivolous, and those claims barred by *Heck* be

dismissed as frivolous with prejudice to being asserted again until the *Heck* conditions are met.

**Plaintiff may file Objections as provided under the Notice of Right to Object below;**

**however, plaintiff is instructed to file all of his objections at one time in a single, timely**

**pleading and not piecemeal in multiple pleadings.**

<u>INSTRUCTIONS FOR SERVICE</u>

The United States District Clerk is directed to send a copy of this Report and

Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this <u>8th</u> day of August, 2014.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation.  In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line.  Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E).  **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation."  Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties.  A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court.  *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).